UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AEARO CORPORATION and<br>AEARO COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:08-cv-0604 DFH-TAB |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN INTERNATIONAL SPECIALTY<br>LINES INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| AMERICAN INTERNATIONAL SPECIALTY<br>LINES INSURANCE COMPANY, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| v. | ) | |
| | ) | |
| AEARO CORPORATION and<br>AEARO COMPANY, | ) | |
| | ) | |
| Counterdefendants, | ) | |

**AEARO'S CONSOLIDATED BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE
IN OPPOSITION TO AISLIC'S MOTION FOR SUMMARY JUDGMENT**

Aearo Corporation and Aearo Company (collectively "Aearo"), by counsel, in

compliance with the Court's January 12, 2009 Entry (Doc. #41), Federal Rule of Civil Procedure

56 and Local Rule 56.1, submit this consolidated brief in support of Aearo's motion for summary

judgment and in opposition to American International Specialty Lines Insurance Company's

("AISLIC's") motion for summary judgment.

# I.    INTRODUCTION

As shown below, Aearo is entitled to summary judgment on its complaint for (a) declaratory judgment that the AISLIC Policy covered claims asserted against Aearo in a lawsuit brought by Climb Tech LLC and others; and (b) AISLIC's breach of contract due to its abandonment of Aearo and requiring Aearo to use its own funds to defend and settle that suit.[1]

In September 2005, Climb Tech LLC and others filed a lawsuit against Aearo for, among other things, misappropriation of trade secrets, breach of contract, federal trademark infringement, common law unfair competition, unjust enrichment and federal and state trademark dilution with respect to Aearo's sales and marketing of a removable anchor bolt called the "SafeClaw" ("Underlying Lawsuit").  Aearo provided notice of these claims to its insurer, AISLIC, and contended that the claims were covered under the Advertising Injury provisions in the relevant AISLIC Policy.

AISLIC denied coverage asserting, alternatively, that the claims were not covered or were excluded under the policy.  AISLIC did not defend the Climb Tech action on a reservation of rights basis or seek a declaratory judgment concerning coverage, but instead, stood firm on its denials.  Aearo expended substantial sums in defending and eventually settling the lawsuit against it.  Aearo later filed this suit seeking a declaratory judgment and breach of contract damages for AISLIC's failure to fulfill its obligations under its policy.

The law is clear that allegations of trademark infringement under the Lanham Act and state law, as well as similar claims, constitute Advertising Injury under the definitions ascribed to that term under the AISLIC Policy.  Moreover, the Underlying Lawsuit is founded on multiple allegations of the misappropriation of advertising ideas and style of doing business in support of

such claims as unfair competition and unjust enrichment.  As shown below, at least some of the claims in the Underlying Lawsuit fall squarely within the Advertising Injury coverage Aearo purchased from AISLIC.

The law is equally clear that AISLIC's duty to defend and indemnify under its policy is triggered if even just one claim in the Underlying Suit is a covered claim.  AISLIC wrongly suggests that the word "solely" within its Advertising Injury coverage provision can avoid this basic premise of insurance contract law and limits its defense and indemnity obligations to only those suits premised entirely on advertising injury.  Such a position is untenable.  At least some of the claims in the Underlying Lawsuit allege Advertising Injury as that term has been interpreted by this Court and the majority of the courts to consider the issue.

Similarly, the exclusions AISLIC asserts as a purported bar to coverage apply, if at all, to only some – but not all – claims in the Underlying Lawsuit.  AISLIC is obligated to defend the Underlying Lawsuit and indemnify Aearo for its settlement on the basis of the non-excluded claims.

Finally, Aearo is entitled to summary judgment on damages.  The amounts paid by Aearo for its defense and in settlement are undisputed, as is the fact that these amounts remain unpaid over the past several years.  AISLIC breached its duties under the AISLIC Policy and is estopped from denying any portion of the liability its insured incurred in the defense and settlement of the Underlying Lawsuit.

---

[1]     For the same reasons, Aearo is entitled to summary judgment on AISLIC's counterclaims.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

**The Underlying Lawsuit that triggered insurance coverage:**

1.      Aearo is a leading manufacturer of workplace safety products, headquartered in Indianapolis, Indiana.  (Exhibit A, Affidavit of Robert B. Hebert (hereinafter "Hebert Aff.") at ¶ 2)

2.      In September 2005, Climb Tech LLC and others ("Climb Tech") brought a lawsuit against Aearo and others for misappropriation of trade secrets, breach of contract, federal trademark infringement, common law unfair competition, unjust enrichment, and federal and state trademark dilution (the "Underlying Lawsuit").  (Exhibit 1 to AISLIC's Summary Judgment Brief, Climb Tech's "Original Petition" (hereinafter ("Underlying Complaint"))

3.      The Underlying Lawsuit focused on Aearo's advertising, marketing and sales of the "SafeClaw" anchor bolt tethering device, alleging, among other things:

a.      "[t]he infringing SafeClaw tethering device has been marketed, and continues to be marketed, in competition with Climb Tech's expansion bolt anchors." (Underlying Complaint ¶ 27);

b.      "Defendants continue to market and sell Aearo/SafeWaze's infringing device as if it were Climb Tech's, using Plaintiff's Mark, model number, label (including Climb Tech's name) marketing materials, text with Climb Tech's name, testing reports, specifications, images, photographs and descriptions to promote and sell Aearo/SafeWaze's Infringing Products" (*Id.* ¶ 29);

c.      "Defendants' continued use of the Mark is likely to cause confusion, dilution and tarnishment of Plaintiff's Mark" (*Id.*);

Case 1:08-cv-00604-DFH-DML   Document 48    Filed 04/08/09   Page 5 of 25

      d.     "Aearo/SafeWaze [and another defendant] have engaged in deceptive practices and unfair competition in the sale and marketing of Aearo/SafeWaze's 'SafeClaws' safety bolt device.  SafeClaws are expressly portrayed and represented as an 'enhanced version of the earlier Climb Tech device sold by Aearo/SafeWaze, creating the false impression that the newer product comes from the same source as the earlier product and that the original source has improved its earlier product" (*Id.* ¶30)

      e.     "Aearo/SafeWaze confuses the consuming public by falsely claiming in its sales materials – for example, on its website as late as April 2005 – that Aearo/SafeWaze has 'the only removable/reusable anchor point for concrete applications,' accompanied by a picture of Climb Tech's expansion bolt device." (*Id.*)

     4.     Within a week after filing the lawsuit, Climb Tech, by counsel, communicated with Aearo about Climb Tech's concerns, which were focused primarily on Aearo's marketing of its products, allegedly using Climb Tech's trademark, marketing materials, and sales literature. (Exhibit B, September 12, 2005 Letter from D. Scardino and its Attachments (hereinafter "Sept. 12, 2005 Letter")).  This letter was accompanied by nearly 50 pages of advertising and marketing materials to which the letter and complaint allegations relate.  (*Id.*)

     5.     As referenced in Climb Tech's correspondence, the allegedly infringing advertising and marketing activities occurred before September 9, 2003.  (*Id.*)

**<u>Coverage under the Policy</u>**

     6.     Aearo had primary commercial liability insurance from Liberty Surplus Insurance Company (the "Liberty Policy") and a Commercial Umbrella Policy from defendant AISLIC for the September 30, 2002 to September 30, 2003 policy period ("AISLIC Policy").  (Hebert Aff. ¶¶ 3 & 4)

7.     Liberty denied coverage for the defense and indemnity of the Underlying Lawsuit because, among other reasons, the Liberty Policy had a specific intellectual property exclusion.[2] (*Id.* ¶ 4)

8.     Under the terms of the AISLIC policy, if there is no coverage under the Liberty Policy, the AISLIC Policy applies to amounts incurred in excess of a self-insured retention of $10,000 to a limit of $25 million. (*Id.*)

9.     The AISLIC Policy provides:

a.     "We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period …" (Exhibit 2 to AISLIC Summary Judgment Brief, Commercial Umbrella Policy Form Effective September 30, 2002 (hereinafter "AISLIC Policy") at page 4 of 38)

b.     "We shall have the right <u>and duty</u> to defend any claim or suit seeking damages covered by the terms and conditions of this policy when . . . Damages are sought for Bodily Injury, Property Damage, Personal Injury or Advertising Injury covered by this policy but not covered by any [underlying insurance] providing coverage to the Insured." (*Id.*)

10.     The AISLIC Policy defines "Advertising Injury" to mean: "injury arising solely out of your advertising activities as a result of one or more of the following offenses":

a.     "Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services";

---

[1]     AISLIC policies for periods after September 30, 2003 also contained an Intellectual Property exclusion, but the relevant AISLIC Policy did not. (Hebert Aff. ¶ 4; *see also generally* AISLIC Policy)  AISLIC has admitted that Liberty denied coverage under the Liberty Policy. (*See, e.g.,* AISLIC's Answer ¶¶ 15, 17, 33)

b.      "Oral or written publication of material that violates a person's right of privacy";

c.      "Misappropriation of advertising ideas or style of doing business"; or

d.      "Infringement of copyright, title or slogan."  (*Id.* at page 6 of 38)

11.      On October 6, 2005, AISLIC acknowledged that Aearo had provided notice of the Underlying Lawsuit.  (Hebert Aff. ¶6 and its Ex. 2)

12.      On February 13, 2007, AISLIC notified Aearo of AISLIC's position that there was no coverage under the AISLIC Policy for the Underlying Lawsuit.  (*Id.* at ¶ 7 and its Ex. 3)

13.      In response to Aearo's objection to AISLIC's denial of coverage, AISLIC confirmed its denial of coverage on April 26, 2007. (*Id.* at ¶ 8 and its Ex. 4)

**Resolution of the Underlying Suit and Aearo's damages:**

14.      In December 2006, Aearo notified AISLIC, through its claims administrator AIG Domestic Claims, Inc. ("AIG") of Climb Tech's settlement demand and Aearo's proposed response to that demand.  (Hebert Aff. ¶ 10 and Ex. 5).  Again, AISLIC, through AIG, reiterated its denial of any coverage for the Climb Tech claims.  *Id.*  AISLIC gave no input into settlement and stated:  "Aearo should act in its own best interests when deciding whether or not to enter into settlement negotiations with Climb Tech and how it chooses to proceed in those negotiations." *Id.*

15.      Abandoned by its insurer, Aearo settled the claims against it in the Underlying Suit, which required payment of a substantial (but confidential) sum.  (Hebert Aff. ¶ 11)[3]  In addition, the settlement required certain inventory write-offs.  (*Id.*)

---

[2]      Although the amount paid in settlement is, by agreement with Climb Tech, confidential, that amount has been shared with AISLIC.

16.     Aearo incurred attorneys' fees and costs of approximately $530,000 in defense of the Underlying Lawsuit.  (*Id.* at ¶ 12)[4]

17.     AISLIC has refused to reimburse Aearo for any portion of these defense and settlement costs, and Aearo has not received reimbursement of any portion thereof from any other source.  (*Id.* at ¶ 13)

## III.     ARGUMENT

**Standard of Review:**  The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

Construction of a written contract, such as an insurance policy, is a question of law for which summary judgment is particularly appropriate.  *Vann v. United Farm Family Mut. Ins. Co.*, 790 N.E.2d 497, 502 (Ind. Ct. App. 2003), *trans. denied* 804 N.E.2d 751 (Ind. 2003); *Ramirez v. Am. Family Mut. Ins. Co.*, 652 N.E.2d 511, 514 (Ind. Ct. App. 1995).  "An insurance policy should be so construed as to effectuate indemnification . . . rather than defeat it."  *Masonic Acc. Co. v. Jackson*, 164 N.E. 628, 631 (Ind. 1929); *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992).  "Where there is ambiguity, insurance policies are to be construed strictly against the insurer.  This is particularly true where a policy excludes coverage."  *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996); *see also Eli Lilly & Co. v. Home Ins.*, 482 N.E.2d 467, 470 (Ind. 1985).

---

[4]      In addition, certain of Aearo's former employees are requesting that Aearo reimburse them for fees they incurred in defense of the claims in the Underlying Lawsuit after Aearo's settlement.  (Hebert Aff. ¶12)  Aearo has

**A.    Under the AISLIC Policy, AISLIC had a duty to defend and indemnify Aearo against the claims in the Underlying Lawsuit.**

Under the AISLIC Policy, AISLIC is obligated to defend and indemnify Aearo where there is no coverage under the primary policy, the Liberty Policy.  (Hebert Aff. ¶ 8)  Liberty denied coverage under the Liberty Policy (AISLIC's Answer ¶¶ 15, 17, 33), and the Liberty Policy contains an Intellectual Property exclusion that excludes coverage for claims asserted in the Underlying Lawsuit such as trademark infringement.  (Hebert Aff. ¶ 4)  Thus, AISLIC is obligated to defend and indemnify Aearo for claims alleging "advertising injury."

"When deciding whether coverage exists, the court must construe the allegations in the [Underlying Lawsuit] 'liberally,' resolving any doubt concerning coverage in favor of the insured."  *Capitol Indemnity Corp. v. Elston Self Svc. Wholesale Groceries, Inc.*, 551 F.Supp.2d 711 (N.D. Ill. 2008), citing *Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729 (7th Cir. 2006).  "The duty to defend is determined from the allegations of the complaint and from the facts known or ascertainable by the insurer after an investigation has been made."  *Indiana Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1381-82 (Ind. Ct. App. 1997), *trans. denied.*

**1.    The Underlying Lawsuit alleges "Advertising Injury" arising from Aearo's advertising activities.**

**The underlying allegations and facts known to AISLIC:**  The AISLIC Policy covers claims for "Advertising Injury," which expressly includes claims for "infringement of copyright, title or slogan" and "misappropriation of advertising ideas or style of doing business."  (AISLIC Policy at page 6 of 38)  The Underlying Lawsuit is replete with references to marketing and advertising, including:

> a.    "[t]he infringing SafeClaw tethering device <u>has been marketed, and continues to be marketed,</u> in competition with Climb Tech's expansion bolt anchors."  (Underlying Complaint at ¶ 27; emphasis added);

---

sent notice of the claims for reimbursement of fees to AISLIC.  (*Id.*)  No response has been received to date.

b.  "Defendants continue to market and sell Aearo/SafeWaze's infringing device as if it were Climb Tech's, <u>using Plaintiff's Mark, model number, label (including Climb Tech's name) marketing materials, text with Climb Tech's name, testing reports, specifications, images, photographs and descriptions to promote and sell</u> Aearo/SafeWaze's Infringing Products" (*Id.* at ¶ 29; emphasis added);

c.  "Defendants' <u>continued use of the Mark is likely to cause confusion, dilution and tarnishment</u> of Plaintiff's Mark" (*Id.*; emphasis added);

d.  "Aearo/SafeWaze [and another defendant] have engaged in <u>deceptive practices and unfair competition in the sale and marketing</u> of Aearo/SafeWaze's 'SafeClaws' safety bolt device.  SafeClaws are <u>expressly portrayed and represented</u> as an 'enhanced version' of the earlier Climb Tech device sold by Aearo/SafeWaze, <u>creating the false impression</u> that the newer product comes from the same source as the earlier product and that the original source has improved its earlier product" (*Id* at ¶30; emphasis added)

e.  "Aearo/SafeWaze <u>confuses the consuming public by falsely claiming in its sales materials</u> – for example, on its website as late as April 2005 – that Aearo/SafeWaze has 'the only removable/reusable anchor point for concrete applications,' <u>accompanied by a picture of Climb Tech's expansion bolt device.</u>" (*Id.*; emphasis added)

Even if the complaint in the Underlying Lawsuit had not been so clearly focused on use of Climb Tech's Mark, advertising ideas and style of doing business, Climb Tech reiterated its concerns about trademark infringement and misappropriation of advertising ideas and style of doing business in a letter immediately after the filing of the complaint.  (Exhibit B, Sept. 12, 2005 Letter)  Attached to the letter were nearly 50 pages of advertising and marketing materials Climb Tech alleged supported its claims.  (*Id.*)  That letter stated:

Aearo/SafeWaze marketed the infringing product, sometimes referred to as a "SafeClaw", through the same dealer network that had previously resold Climb Tech's product but using Climb Tech's trademark, marketing materials, and sales literature, including photos of Climb Tech's "RB Anchor" expansion bolt device, are attached for your reference.

AISLIC has multiple copies of this letter and its attachments, which AISLIC produced many times over in discovery in this case.  (Exhibit B, September 12, 2005 Letter (displaying AISLIC's bates numbering))  Thus, the emphasis plaintiffs put on trademark infringement and misappropriation of advertising ideas and style of doing business as part of the Underlying Suit was a "fact known or ascertainable by" AISLIC when it denied coverage and abandoned its insured.

      **The applicable law:**  Importantly, the Underlying Lawsuit includes a claim for, among other things, trademark infringement.  (*See generally* Underlying Complaint)  The Seventh Circuit has long recognized that a "trade-mark is but a species of advertising." *Northam Warren Corp. v. Universal Cosmetic Co.*, 18 F.2d 774, 774 (7th Cir. 1927).  In *Fidelity & Guaranty Ins. Co. v. Kocolene Marketing Corp.*, 2002 U.S. Dist. LEXIS 8518, *23-24, Cause No. IP00-1106-C/T (S.D. Ind., Mar. 26, 2002), Judge Tinder held that the policy coverage for claims alleging "misappropriation of advertising ideas and style of doing business" provided coverage for trademark and trade dress infringement and noted that the majority of courts that have considered the issue have reached this conclusion, citing several examples.  The Court also held that trademark and trade dress infringement claims arguably fall under the "infringement of title" provisions of "advertising injury."  *Id.* at *28, citing *Charter Oak Fire Ins. v. Hedeen & Cos.*, 280 F.3d 730, 736 (7th Cir. 2002) and *Zurich Ins. Co. v. Amcor Sunclipse North America*, 214 F.3d 605, 608 (7th Cir. 2001).  "A trademark depends for its effectiveness on communicating a message to consumers about the marked good, which is the essence of advertising, and therefore allegations of trademark infringement arguably allege misappropriation of an advertising idea." *Frog, Switch & Mfg Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, citing *Industrial Molding Corp. v. American Manufacturers Mut. Ins. Co.*, 17 F.Supp.2d 633, 639 (N.D. Tex. 1998)

(describing the inclusion of trademark infringement within "advertising injury" as the majority position and providing examples); *see also Capitol Indemnity Corp. v. Elston Self Svc. Wholesale Groceries, Inc.,* 551 F.Supp. 2d 711, 720 (N.D. Ill. 2008)(citing a litany of cases supporting Aearo's position – the majority position – that trademark infringement constitutes Advertising Injury). Thus, the trademark infringement claims within the Underlying Lawsuit fall within the covered "advertising injury" and trigger AISLIC's duty to defend and indemnify.[5]

The Underlying Lawsuit contains other allegations that fall within the enumerated examples of "advertising injury" listed in the policy. In *Heritage Mut. Ins. Co. v. Advanced Polymer Technology, Inc.*, 97 F.Supp.2d 913 (S.D. Ind. 2000), Judge Barker, engaged in a detailed analysis of the meaning of "misappropriation of advertising ideas or style of doing business."[6] 917 F.Supp.2d at 926. For example, in *Zurich Ins. Co. v. Sunclipse, Inc.*, 85 F.Supp.2d 842, 854 (N.D. Ill. 2000), the court interpreted misappropriation of an advertising idea to mean "the wrongful taking of the manner in which another advertises its goods or services." It is difficult to comprehend how allegations that Aearo was "using Plaintiff's Mark, model number, label (including Climb Tech's name) marketing materials, text with Climb Tech's name, testing reports, specifications, images, photographs and descriptions to promote and sell"

---

[5] "At a minimum, 'the divergence of case law regarding whether trademark and trade dress infringement comes within the 'infringement of title' offense in standard [commercial general liability] advertising injury provisions is indicative that the language is ambiguous.' Ambiguous language must be construed in favor of the insureds. In light of governing case law, title infringement could include trademark infringement, and Capitol Indemnity is therefore bound to defend Lorillard's claims in the underlying litigation. *Capitol Indemnity Corp. v. Elston Self Svc. Wholesale Groceries, Inc.,* 551 F.Supp. 2d 711, 720 (N.D. Ill. 2008)(internal citations omitted).

[6] In *Heritage Mutual*, the Court found that there was no alleged advertising injury in the underlying case which was premised entirely on patent infringement. 97 F.Supp.2d at 927 ("Environ neither mentions its own advertisements nor compares them in any respect  Moreover, the Heritage opinion noted that it was issued before any Indiana court had weighed in on the meaning of advertising injury. 97 F.Supp.2d at 921. The next year, in *Hoosier Ins. Co. v. Audiology Foundation of America*, 745 N.E.2d 300, 308 (Ind. Ct. App. 2001), the Indiana Court of Appeals held that Advertising Injury provisions (specifically for "misappropriation of style of doing business") identical to those in the AISLIC Policy covered claims for false advertising, false designation of origin, and unfair competition.

Aearo's products could constitute anything other than alleged "misappropriation of advertising ideas or style of doing business."  In *Atlantic Mut. Ins. Co. v. Badger Med Supply Co.*, 528 N.W.2d 486, 490 (Wis. Ct. App. 1995), the court defined advertising idea as "an idea calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage."  In alleging that Aearo, in its advertising, "expressly portrayed and represented [its product] as an 'enhanced version' of the earlier Climb Tech device sold by Aearo/SafeWaze, creating the false impression that the newer product comes from the same source as the earlier product and that the original source has improved its earlier product," Climb Tech was alleging misappropriation of advertising ideas and style of doing business.  The Underlying Lawsuit alleges "advertising injury" throughout.

**AISLIC admits that some of the conduct alleged in the Underlying Lawsuit is "advertising injury.":**  AISLIC contends in its summary judgment brief that it "does not concede" that the Advertising Injury provisions of the AISLIC Policy encompasses the conduct alleged in the Underlying Lawsuit.  (AISLIC Br. at 5)  However, AISLIC does concede that allegations against some defendants allege advertising injury.  For example, AISLIC expressly concedes and agrees allegations that Scaffold Service, Inc. and White Cap Construction, Inc. "used Climb Tech's 'proprietary trademarks and trade names to advertise and sell Aearo's products'" and allegations that Sky Climber Access Solutions, LLC and Contractorstools.com used Climb Tech's 'marketing materials, proprietary information, trademarks and/or trade names" were, in AISLIC's words, "to be sure" allegations that these defendants injured Climb Tech through their advertising activities.  (AISLIC Br. at 6).  Having made this concession and admission, AISLIC cannot deny that allegations that "Defendants" (generally, and including Aearo) were "using Plaintiff's Mark … marketing materials … photographs and descriptions to

promote and sell" Aearo's products are not allegations of "advertising injury" within the meaning of the policy.

**2.    The "solely" language of the AISLIC Policy does not relieve AISLIC of its duty to defend and indemnify.**

AISLIC, in its summary judgment, relies heavily on the term "solely" to relieve it of a duty, established at law, to defend and indemnify Aearo against claims for advertising injury. The term "solely" is not defined in the policy, nor does AISLIC clearly define in its summary judgment brief what is meant by this term.  In construing this language the Court is guided by general principles of insurance and contract law that caution that the terms in an insurance contract may not be construed in a manner "repugnant to the purposes of the policy in a whole." *Property Owners v. Hack*, 559 N.E.2d 396, 402 (Ind. Ct. App. 1990).

If recovery in the underlying suit is premised upon several theories of liability, some of which are not covered under the policy, the insurer has a duty to defend if just one theory falls within the policy's coverage.  *Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991).  AISLIC seems to imply that where a multi-count complaint includes some claims that have been repeatedly recognized as "advertising injury" and some claims that are not advertising injury, then the "solely" language relieves AISLIC of its duty to defend.   AISLIC seems to argue that its advertising injury coverage would apply only where advertising injury was the sole claim in the Underlying Lawsuit or every claim in the suit alleged advertising injury.[7]  Such an interpretation would be contrary to *Kopko* and the well-established principle that if one claim in the underlying suit is covered the insurer has a duty to defend.  *See also Auto Owners Ins. v. La*

---

[7]        Although this argument is not clearly and expressly stated, it would seem to be the only basis by which AISLIC could contend that allegations of trademark infringement and allegations concerning use of Climb Tech's proprietary information and marketing materials by some defendants (defendants who are not insured by AISLIC) are "to be sure" allegations of injury occurring solely through advertising activities, while the same allegations when asserted against Aearo are not covered by the AISLIC Policy.

*Oasis, Inc.*, 2005 U.S. Dist. LEXIS 43565 (N.D. Ind. May 26, 2005); *Heritage Mutual Ins.*, 97 F.Supp.2d at 918 ("An insurer must defend an action even if only a small portion of the conduct alleged in the complaint falls within the scope of the insurance policy." AISLIC's proposed "rigidly technical or legalistic construction of a policy term [("solely")] may not be used to defeat coverage." *Kiger*, 662 N.E.2d at 948-49 (Ind. 1996).

The cases on which AISLIC relies to support its argument concerning its "solely" language as a bar to recovery do not require that advertising injury be the sole claim in order for the Underlying Lawsuit to trigger the insurer's duty to defend and indemnify. Instead, those cases require merely that there be some causal connection or nexus between the advertising activities and the injury alleged in the underlying suit. For example, *Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 94 F.3d 1219 (9th Cir. 1996), scoured each claim for the requisite "causal connection" between the alleged advertising activities and the injury and held that such connection was missing because (a) "as a matter of law, patent infringement cannot occur in the course of an insured's activities," (b) the advertising activities did not cause the injury (which occurred and was complete when the insured used the patented technology and process) but merely exposed it. 94 F.3d at 1222-23; *see also Microtec Research Inc. v. Nationwide Mutual Ins. Co.*, 40 F.3d 968, 971 (9th Cir. 1994) ("the complaint conspicuously and carefully omitted to allege any wrongdoing with respect to [Microtec's] advertisements").

AISLIC relies on *Discover Financial Services LLC v. National Union Fire Ins. Co.*, 527 F.Supp.2d 806, 823 (N.D. Ill. 2007) to assert that the AISLIC Policy requires a showing that Aearo's advertising must be the "sole cause" of Climb Tech's alleged injury. (AISLIC Br. at 6) *Discover Financial Services* was a patent infringement case in which the court repeatedly emphasized the plaintiff's complaint made "no reference to Discover's advertising." 527

F.Supp.2d at 821.  While the *Discover* court rests its holding on the lack of allegations related to advertising, the court also made clear despite the "solely" language in the policy, the existence of the non-covered patent infringement claims would not determine the coverage issue if there were other claims (as in this case) that do allege injury arising from advertising activities.  *Discover Financial Services*, 527 F. Supp. 2d at 821 n.10 ("Because the duty to defend is triggered even if only one theory of recovery potentially falls within the Policy's coverage, National Union's duty to defend is implicated if some of [plaintiff's] patent infringement claims might arise solely out of advertising activities such that [plaintiff] may have suffered an advertising injury.")

The requisite causal connection exists in this case.  The Underlying Lawsuit seeks an injunction based on allegations that "Defendants' continued use of the Mark is likely to cause confusion among customers and vendors that will result in a loss of customers, reputation, goodwill, revenue, and profits, diminished marketing and advertising, and trademark dilution." (Underlying Complaint at ¶61)  As this Court held in *Kocolene*, the request for injunctive relief against use of trademark and similar packaging, labeling and trade dress was "indicative of a causal connection between the alleged injury and [defendant's] advertising activities."

AISLIC's argument that the trademark dilution claim in the Underlying Lawsuit is "based on activity other than Aearo's advertising activities" ignores long-standing Seventh Circuit precedent that "trade-mark is but a species of advertising,"  *North Warren Corp.*, 18 F.2d 774, 774 (7th Cir. 1927), as well as the majority position that "passing off, trademark, trade name or trade dress infringement claims implicitly involve advertising activity, because such claims necessarily involve use of the mark to identify and promote the insured's goods or services to a substantial number of people."  *Adolfo House Distrib. v. Travelers Prop. & Cas. Ins. Co.*, 165 F.Supp.2d 1332, 1339-40 (S.D. Fla. 2001).

In *Capitol Indemnity Corp. v. Elston Self Service Wholesale Groceries, Inc.*, the Court discussed the difference between "mere advertisement of an infringing product" and advertising that was "likely to cause confusion, mistake, or deception as to their source, origin, or authenticity," and advertising that "traded on a company's goodwill and business reputation, thereby injuring that company." 551 F. Supp.2d at 724. The latter constitutes advertising injury because it is the advertisements themselves, rather than merely the product, that was allegedly wrongful. *Id.*

While Climb Tech alleged in the Underlying Lawsuit that the product itself was infringing and unlawful, it also alleged that the advertisements themselves and Aearo's alleged use of Climb Tech's proprietary Mark were wrongful and "likely to cause confusion among customers and vendors that will result in a loss of customers, reputation, goodwill, revenue, and profits, diminished marketing and advertising, and trademark dilution." (Underlying Complaint at ¶61) Such allegations show the causal connection required to establish coverage under the Advertising Injury provisions of the AISLIC Policy. Such allegations, if proved, give rise to separate liability that could stand alone regardless of the fate of any other claim in the Underlying Lawsuit. In other words, the Underlying Lawsuit could have subjected Aearo to liability "solely" on the basis of advertising activities. Regardless of any other claims in the suit, AISLIC had a duty to defend and indemnify its insured, Aearo.

**B.    The exclusions of the AISLIC Policy do not relieve AISLIC of its duty to defend and indemnify.**

The insurer bears the burden of proving that an exclusion to coverage applies. *Hoosier Ins. Co. v. Audiology Found.*, 745 N.E.2d 300, 309 (Ind. Ct. App. 2001), *trans. denied.* The well-established premise that insurance policies are construed strictly against the insurer "is particularly true where a policy excludes coverage." *Kiger*, 662 N.E.2d at 947, citing *Asbury v*

17

*Indiana Union Mut. Ins. Co.*, 441 N.E.2d 232, 242 (Ind. Ct. App. 1981).  "Moreover, if the

insurer, in denying coverage, relies upon an exclusion clause, the burden rests upon the insurance

company to demonstrate that the allegations of the complaint can be interpreted <u>only</u> to exclude

coverage."  *Atlantic Mut. Ins. Co. v. Terk Technologies Corp.*, 309 A.D.2d 22, 763 N.Y.S.2d 56

(N.Y. App. 2003)(emphasis added).

AISLIC has not carried its burden.  AISLIC's arguments may demonstrate that certain

claims in the Underlying Lawsuit might have been excluded if asserted alone.  However, AISLIC

had an obligation to defend and indemnify Aearo based on claims that were not excluded by the

policy exclusions.

> **1.     The Knowledge of Falsity exclusion does not exclude coverage for all of the "advertising injury" claims asserted against Aearo.**

AISLIC claims coverage for Advertising Injury is excluded to the extent that Aearo is

alleged to have acted intentionally and willfully.  (AISLIC Br. at 9)  As an initial matter, courts

in Indiana and the Seventh Circuit have noted that coverage for advertising injury must

necessarily include intentional acts.  In *OSI Industries*, the Indiana Court of Appeals noted:  "We

are perplexed at how advertising could be anything but intentional conduct."  831 N.E.2d at 204;

*see also Federal Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563 (7th Cir. 1997) ("personal injury

and advertising injury policies regularly cover intentional acts"); *Indiana Ins. Co. v. North*

*Vermillion Comm. Sch. Corp.*, 665 N.E.2d 630 (Ind. Ct. App. 1996) (suit alleging intentional

libel or slander generated a duty to defend under personal injury policy).  The inherently

intentional and willful nature of advertising activities has led courts to conclude that exclusion of

advertising injury coverage as intentional conduct – as AISLIC is urging here – would make all

coverage for advertising illusory.  *Liberty Mut. Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d at 204.

To the extent that AISLIC argues that Aearo's covered advertising conduct is inherently

intentional, the asserted exclusion makes coverage for such conduct illusory and therefore the exclusion is improper. *See City of Lawrence v. Western World Ins. Co.*, 626 N.E.2d 477, 480 (Ind. Ct. App. 1993); *Davidson v. Cincinnati Ins. Co.,* 572 N.E.2d 502 (Ind.Ct.App. 1991).

The cases AISLIC cites are distinguishable because, unlike the Underlying Lawsuit, they involved litigation against the insured based wholly and without exception on intentional misconduct. *See, e.g., A.J. Sheepskin & Leather Co. v. Colonia Ins. Co.*, 273 A.D.2d 107, 107, 709 N.Y.S.2d 82, 82 (N.Y. App. 2000)("allegations of complaint … premised, without exception, upon conduct both knowing and intentional").[8]  In *Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, 500 F.3d 640 (7th Cir. 2007), the court considered a similar exclusion in the context of a lawsuit alleging consumer fraud and violations of antitrust laws in which "[e]ach complaint was based on allegations that Del Monte knowingly submitted fraudulent patent applications, knowingly sent false letter to competitors regarding its patent rights, and knowingly engaged in fraudulent patent litigation."  500 F.3d at 643; *see also id.* at 645 ("[W]hen we turn to the actual complaints, we find that each one is based on fraud or knowingly false acts.  Not one could lead to relief on a showing of negligent conduct alone.").

The Seventh Circuit found there was no coverage in that case, based wholly and entirely on fraud claims, but contrasted an earlier case, *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 745 (7th Cir. 2001), in which the complaint was one of tortious interference, which can be alleged as either a negligence or an intentional tort action.  In *Cincinnati Ins.*, the Seventh Circuit held:  "because the complaint did not limit itself to intentional tort allegations, and because the

---

[8]     In fact, in one of the cases AISLIC cites, the determination that exclusion applies was based not on the pleadings but on the adjudicated determination that the insured's conduct was intentional.  *See Atlantic Mut. Ins. Co. v. Terk Technologies Corp.*, 309 A.D.2d 22, 30, 763 N.Y.S.2d 56, 62 (N.Y. App. 2003) ("In this matter, because the underlying action has been fully adjudicated and there can no longer be any doubt that Terk's conduct was fraudulent and, therefore, outside of the policy's coverage, no duty to defend provided by that insurance contract can possibly arise.")

insured could be found liable even if 'knowledge of falsity' was not proved, there was a duty to defend." 260 F.3d at 746-47. "The important question is therefore whether the tendered complaint alleges facts that, if proved would show that the insured has committed acts that fall within the policy's coverage." *Del Monte Fresh Produce*, 500 F.3d at 644, citing *Cincinnati Ins.*, 260 F.3d at 745.[9]

AISLIC has not carried its burden of demonstrating that the allegations of the Underlying Lawsuit could be interpreted <u>only</u> to exclude coverage. AISLIC cites examples of alleged willful and intentional conduct. However, AISLIC simply ignores those portions of the complaint in the Underlying Lawsuit that could potentially (absent the settlement) have subjected Aearo to liability without a finding of intent. For example, the Underlying Lawsuit alleges violation of the Lanham Act §§ 43(a) and 43(c). (Underlying Complaint at Counts III and IV) Although plaintiffs alleged intentional conduct in an effort to obtain exemplary and treble damages, the Act does not require willful and intentional conduct and Aearo could potentially have been found liable in the absence of a finding of willful and intentional wrongdoing. In *Capitol Indemnity*, 551 F.Supp. 2d at 726, the Northern District of Illinois considered the operation of a similar exclusion in relation to alleged violations of the Lanham Act and held: "Although the [underlying complaint] does include allegations that Defendants [insureds] acted intentionally, [plaintiff] need not prove that the [insureds] engaged in intentional or willful conduct to prevail. . . . Thus, the intentional conduct exclusion does not relieve Capitol Indemnity of its owed [] duty to defend."[10]

---

[9]  Importantly, *Del Monte* expressly did not include claims for misappropriation of advertising ideas, which the Court impliedly recognizes would have required the insurer to defend and indemnify the insured. 500 F.3d at 646.

[10]  In support of its Knowledge of Falsity exclusion, AISLIC cites cases from New York and Texas but ignores this recent precedent of the court in the home court of its Chicago counsel.

Moreover, plaintiffs alleged that Aearo, by its "depiction of Plaintiff's expansion bolt on the Aearo/SafeWaze web page, the false statement that it is the only such product on the market, and other suggestions that the SafeClaw is an improved version of the Plaintiff's product . . . . have unjustly enriched [Aearo]." (Underlying Complaint at ¶ 53) This unjust enrichment theory is not dependent on willful and intentional conduct.

There are many theories pled in the Underlying Lawsuit under which Aearo was potentially liable for Advertising Injury in the absence of intentional and willful misconduct. So long as there is even one such theory, AISLIC's duty to defend and to indemnify Aearo is triggered and the Knowledge of Falsity exclusion does not relieve AISLIC of that duty.

**2.     The Breach of Contract exclusion does not exclude coverage for all of the "advertising injury" claims asserted against Aearo.**

With respect to the breach of contract exclusion, again, AISLIC has not carried its burden of demonstrating that the allegations of the Underlying Lawsuit could be interpreted <u>only</u> to exclude coverage. The Underlying Lawsuit was based on multiple theories – misappropriation of trade secrets, tortious interference with prospective business relations, tortious interference with existing contract, violation of Lanham Act §43(a), trademark dilution, Texas common law trade name and trademark infringement, state unfair competition, unjust enrichment and/or misappropriation. (*See generally* Underlying Complaint) All of these claims relate to the alleged "misappropriation of advertising ideas or style of doing business" and "infringement of copyright, title or slogan." *See* Part A.1. above. And, any one of these claims could potentially have subjected Aearo to liability regardless of the outcome of the contract claim. Given the potential for liability regardless of the fate of the contract claims, the exclusion does not relieve AISLIC of its duty to defend.

**C.    AISLIC abandoned its insured, despite its duty to defend and indemnify Aearo, and is now liable for Aearo's damages.**

Aearo incurred substantial damages in its defense and settlement of the Underlying Lawsuit, which have been disclosed to the insurer and to this Court, under seal and in accordance with the confidentiality that was mandated in the settlement agreement.  Under the AISLIC Policy, Aearo is entitled to recover all amounts paid (plus prejudgment interest)[11] from AISLIC.  AISLIC is estopped from denying any portion of these damages.  As explained in *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1028 (Ind.Ct.App. 1999) *trans. denied*:

> If an insurer fails to defend under a reservation of rights or to seek a declaratory judgment that there is no coverage and is later found to have wrongfully denied coverage, the insurer may be estopped from raising policy defenses to coverage. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127, 237 Ill.Dec. 82, 708 N.E.2d 1122, 1133 (1999).  This estoppel doctrine has roots in the principle of equitable estoppel but "arose out of the recognition that an insurer's duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract."  *Id.* at 1135.[12]

AISLIC did not defend Aearo under a reservation rights or seek a declaratory judgment concerning its duties under the policy.  Instead, it abandoned its insured, Aearo, and instructed Aearo to "act in its own best interests when deciding whether or not to enter into settlement negotiations with Climb Tech and how it chooses to proceed in those negotiations." (Hebert Aff. ¶ 10 and Ex. 5)  When an insurer abandons its insured and "induces the insured to effect self-help to protect himself, it cannot then hide behind the language of the insurance policy to avoid its duty to defend or insure."  *Indiana Insurance Co. v. Ivetich*, 445 N.E.2d 110, 112 (Ind. Ct. App. 1983); *see also Federal Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 571 (7th Cir. 1997).

---

[11]       In addition, Aearo is entitled to recover any additional amounts it may potentially become obligated to pay as a result of the Underlying Lawsuit.  (*See* Hebert Aff. ¶ 13)

[12]       "When an insurance company unjustifiably fails to defend after a demand, it suffers serious consequences including loss or curtailment of the right to claim that the insured breached policy provisions, that the insured did not cooperate, and that the insured settled without its consent.  In addition to this loss of contractual rights, however, the insurer also becomes liable for a judgment entered against the insured and, as a general statement subject to qualifications, for any settlement entered into by the insured in good faith." COUCH ON INSURANCE § 205:1.

In the AISLIC Policy, AISLIC covenants and agrees that it "will defend any suit against the Insured seeking damages on account of … Advertising Injury." (AISLIC Policy at page 4 of 38)  Where some claims may have not been covered or may have been excluded from coverage, so long as at least one claim in the Underlying Suit was covered by the AISLIC Policy – and, as shown above, several claims were covered – AISLIC had a duty to defend the suit.  *Kopko*, 570 N.E.2d at 1285.  Having breached that duty, AISLIC is liable for the damages Aearo incurred in paying the costs of its defense.

Similarly, AISLIC is obligated to reimburse Aearo for the full amount it paid in settlement.  As the Indiana Court of Appeals has recognized:  "The defendant [insurer] is obligated under its insurance policy to defend the suit brought against [its insured.  This it refused to do.  [The insured] was thereupon required to engage an attorney and provide [its] own defense.  With the insurance company denying liability, [the insured] was entitled to use all reasonable means of avoiding personal liability."  *American Family Mut. Ins. Co. v. Kivela*, 408 N.E.2d 805 (Ind. Ct. App. 1980), quoting *Metcalf v. Hartford Accident & Indemnity Co.*, 176 Neb. 468, 126 N.W.2d 471 (1964).  "[A]n insurer may not hide behind the 'legally obligated to pay' language of the policy after it abandons its insured and the insured settles the claim against him by agreement."  *Kivela*, 408 N.E.2d at 813; *see also Frankenmouth Mutual Ins. Co. v. Williams*, 690 N.E.2d 675, 679 (Ind. 1997)(where insurer failed to defend under a reservation of rights or seek a declaratory judgment concerning its duties to defend and indemnify, insurer was estopped after settlement from litigating whether insured's conduct was negligent (a covered claim) or intentional (a non-covered claim)).  In accordance with AISLIC's instructions, Aearo "act[ed] in its own best interests when deciding whether or not to enter into settlement

negotiations with Climb Tech and how it [chose] to proceed in those negotiations."  AISLIC is now liable to Aearo for the amounts paid in settlement.

### IV.    CONCLUSION

For the foregoing reasons, Aearo is entitled to judgment as a matter of law on its claims for declaratory judgment and breach of contract.  Aearo should be awarded all sums paid by it, in excess of the self-insured retention of $10,000, to defend and settle the Underlying Lawsuit, plus pre-judgment and post judgment interest at the legal rate until paid.  The Court should deny AISLIC's motion for summary judgment and enter judgment against AISLIC on its counterclaims.

Respectfully Submitted,

*/s/ David C. Campbell*
*/s/ Anne L. Cowgur*
David C. Campbell
Anne L. Cowgur
BINGHAM MCHALE LLP
2700 Market Tower Building
10 West Market Street
Indianapolis, IN 46204
(317) 635-8900
(317) 236-9907 (facsimile)
dcampbell@binghammchale.com
acowgur@binghammchale.com

*Attorney for Plaintiffs, AEARO CORPORATION and AEARO COMPANY*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 8, 2009, a true and correct copy of the above and foregoing document was served electronically on counsel for defendant at the email addresses shown below:

Kelly A. Kraft
Robert S. Marshall
Daniel I. Graham, Jr.
Tiffany J. Beverly
BATES & CAREY LLP
kkraft@batescarey.com
rmarshall@batescarey.com
dgraham@batescarey.com
tbeverly@batescarey.com


s/ Anne L. Cowgur