UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AEARO CORPORATION and AEARO COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 1:08-cv-0604-DFH-DML |
| v. | ) | |
| | ) | |
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

In September 2005, Climb Tech LLC sued plaintiffs Aearo Corporation and Aearo Company for alleged wrongs arising out of Aearo's distribution of Climb Tech's fall protection products and other products that were similar to Climb Tech's products. Aearo called upon defendant American International Specialty Lines Insurance Company (AISLIC) to defend the lawsuit pursuant to the terms of the general commercial liability policy that AISLIC had issued to Aearo. AISLIC denied coverage and declined to defend the suit. Aearo defended the lawsuit and eventually settled with Climb Tech on its own. In this action under the court's diversity jurisdiction under 28 U.S.C. § 1332, Aearo seeks to recover from AISLIC the cost of the settlement and its expenses in litigating the Climb Tech suit. Both sides have filed motions for summary judgment. For the reasons explained below, AISLIC's motion is denied and Aearo's motion is granted.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the non-moving parties. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The fact that both sides have filed motions for summary judgment does not alter the applicable standard; the court must consider each motion independently and will deny both motions if there is a genuine issue of material fact. *E.g.*, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Harms v. Laboratory Corp. of America*, 155 F. Supp. 2d 891, 905-06 (N.D. Ill. 2001). In considering cross-motions for summary judgment, the court must consider the evidence through two lenses. When considering AISLIC's motion for summary judgment, the court must give Aearo the benefit of all conflicts in the evidence and the benefit of all reasonable inferences that might be drawn from the evidence in its favor, even if the evidence or the inferences seem improbable. When

considering Aearo's motion for summary judgment, the roles are reversed and AISLIC receives the benefit of the conflicts and favorable inferences.

*Facts for Summary Judgment*

I.   *Background*

Aearo Corporation manufactures workplace safety products and has its headquarters in Indianapolis, Indiana.  On March 14, 2003, Aearo purchased a North Carolina company called SafeWaze and functionally integrated SafeWaze under the Aearo name by March 31, 2005.   This integration made Aearo accountable for SafeWaze's liabilities, or at least Aearo does not dispute the point.

In 2001, SafeWaze contracted with Climb Tech, a manufacturer of fall protection equipment based in Texas, to distribute Climb Tech's products.  On September 23, 2001, SafeWaze signed distribution and confidentiality agreements with Climb Tech.  Dkt. No. 46, Exs. 1-A, 1-B.  In these agreements, SafeWaze agreed to distribute Climb Tech's products and to receive confidential information from Climb Tech under certain conditions.  In particular, SafeWaze agreed not to disclose Climb Tech's confidential information or to manufacture any competing product. Dkt. No. 46, Ex. 1, at 11-12 (Climb Tech Complaint).  On June 20, 2002, SafeWaze signed a similar confidentiality agreement with Climb Tech regarding another Climb Tech product.  Dkt. No. 46, Ex. 1-C.  The distribution arrangement

continued until May 2003, when Climb Tech ended its relationship with SafeWaze and Aearo.  Dkt. No. 46, Ex. 1, at 14.

II.    *The Climb Tech Suit*

On September 7, 2005, Climb Tech and another plaintiff sued Aearo and several other defendants in Texas under an array of theories.  Dkt. No. 46, Ex. 1. Climb Tech alleged that Aearo "essentially stole Plaintiffs' proprietary secrets and technology and produced a knock-off of Plaintiffs' proprietary design, trademark and packaging, billing the competing expansion bolt device as the 'enhanced line of "SafeClaw" Anchors.'"   *Id.* at 12-13.   Aearo then "began manufacturing, producing and marketing the Infringing Products that were substantially the same as Plaintiffs' product."   *Id.* at 13.

Climb Tech also complained about Aearo's use of Climb Tech's trademark. It alleged:

> Defendants use the Mark to identify products unaffiliated with Plaintiffs' fall support devices.  Unaware or complicit in the theft, many of the Defendants continue to market and sell Aearo/SafeWaze's infringing device as if it were Climb Tech's, using Plaintiff's Mark, model number, label (including Climb Tech's name), marketing materials, text with Climb Tech's name, testing reports, specifications, images, photographs and descriptions to promote and sell Aearo/SafeWaze's Infringing Products.

*Id.* at 13.  Climb Tech alleged that Aearo's actions were "likely to cause confusion, dilution and tarnishment of Plaintiff's Mark" and that the infringement was "knowing and willful."   *Id.* at 13-14.

-4-

Finally, Climb Tech alleged that Aearo "engaged in deceptive practices and unfair competition in the sale and marketing of Aearo/SafeWaze's 'SafeClaws' safety bolt device." *Id.* at 14.   Aearo, it alleged, "expressly portrayed and represented [the infringing product] as an 'enhanced version' of [Climb Tech's product], creating the false impression that the newer product comes from the same source as the earlier product." *Id.*  Climb Tech further alleged that Aearo "confuses the consuming public by falsely claiming in its sales materials . . . that Aearo/SafeWaze has '[t]he only removable/reusable anchor point for concrete applications,' accompanied by a picture of Climb Tech's expansion bolt device.'" *Id.*

Climb Tech's complaint listed several causes of action:  (1) misappropriation of trade secrets under Texas common law; (2) breach of contract; (3) federal trademark infringement; (4) federal trademark dilution; (5) trademark dilution under Texas state law; (6) unfair competition under Texas common law; and (7) civil conspiracy or aiding and abetting.   *Id.* at 14-20.   In the trademark infringement and dilution counts, Climb Tech alleged that it was entitled to treble damages because of the "exceptional nature of the case," in particular, because Aearo's infringement was willful.   *Id.* at 17-18; see also *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435-36 (7th Cir. 1989) (treble damages are proper under the federal trademark statute when infringement is "deliberate").   Climb Tech also requested injunctive relief, attorney fees, and punitive damages.   *Id.* at 20-23.   Climb Tech was entitled to attorney fees, it

alleged, because of the "willful nature of Defendants' infringement."  *Id.* at 22.
Climb Tech further alleged that its request for punitive damages was exempt from
a cap imposed by Texas state law because Aearo's knowing and willful acts made
it guilty of a third degree felony under Texas state law.  *Id.* at 22; see Texas Civil
Practice and Remedies Code § 41.008(c)(13) (providing exemption).

III.    *The AISLIC Policy*

Aearo bought two commercial insurance policies effective for the period
between September 30, 2002 and September 30, 2003.  One was a primary
commercial liability policy from the Liberty Surplus Insurance Company and the
other was a commercial umbrella policy from AISLIC.

The AISLIC policy provided that AISLIC would "pay on behalf of the Insured
those sums in excess of the Retained Limit that the Insured becomes legally
obligated to pay by reason of liability" for, among other things, "Advertising Injury
that takes place during the Policy Period and is caused by an Occurrence."  Dkt.
No. 46, Ex. 2, at 4 (AISLIC Commercial Umbrella Policy Form).  AISLIC also
promised to "defend any claim or suit seeking damages covered by the terms and
conditions of this policy," provided that the suit was for advertising injury "covered
by this policy but not covered by any underlying insurance."  *Id.*  The AISLIC
policy defined "Advertising Injury" as

injury arising solely out of your advertising activities as a result of one or more of the following offenses:
1. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
2. Oral or written publication of material that violates a person's right of privacy;
3. Misappropriation of advertising ideas or style of doing business; or
4. Infringement of copyright, title or slogan.

*Id.* at 6.

The AISLIC policy also listed two relevant exclusions from coverage. First, the policy excludes coverage for advertising injury "Arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity." *Id.* at 10-11. Second, the policy excludes coverage for advertising injury "arising out of . . . Breach of contract, other than misappropriation of advertising ideas under an implied contract." *Id.*

IV.    *The Coverage Dispute*

Aearo's primary insurer, Liberty, denied coverage for both defense and indemnity of Climb Tech's suit. This denial triggered AISLIC's coverage if the other terms of the AISLIC policy were met. On September 21, 2005, Aearo provided notice of the Climb Tech suit to AISLIC, asserting that the policy's advertising injury provisions covered the Climb Tech suit and triggered AISLIC's duty to defend the lawsuit on Aearo's behalf. Dkt. No. 48, Ex. A, at 2 (Hebert Affidavit).

While awaiting AISLIC's response, Aearo proceeded to defend the suit on its own and began settlement negotiations with Climb Tech.  On December 18, 2006, Aearo sent AISLIC a letter detailing a settlement offer from Climb Tech and Aearo's proposed response.  Dkt. No. 48, Ex. A, at 3; Ex. A-5, at 1.  On January 3, 2007, AISLIC responded through its claims administrator that it had received no indication that Aearo's primary insurance policy would not cover the lawsuit.  Therefore, AISLIC argued, its coverage was not triggered and Aearo should "act in its own best interests" in considering its settlement options.  *Id.*[1]

AISLIC eventually denied coverage for Aearo's claim in a letter on February 13, 2007 asserting that the claims in the Climb Tech lawsuit were not claims of "advertising injury" and that they would be excluded under one of various exclusions even if they were.  Dkt. No. 48, Ex. A-3.  In a February 27, 2007 response, Aearo objected to AISLIC's denial of coverage.  Dkt. No. 48, Ex. A-4, at 1.  AISLIC confirmed its denial in a letter to Aearo on April 26, 2007 and took no part in the defense of the Climb Tech suit.  Aearo settled with Climb Tech in April 2007 for a confidential sum.  In addition to the amount of the settlement, Aearo contends that it paid attorney fees and costs to defend the Climb Tech suit, and several former Aearo employees are seeking payment from Aearo for defense costs incurred after Aearo's settlement.  Dkt. No. 48, Ex. A, at 3-4.  Aearo brought

---

[1]In this action, AISLIC has conceded that Liberty Surplus denied coverage for the Climb Tech suit.  Dkt. No. 21, ¶¶ 17, 33 (AISLIC's Answer).

this action for declaratory judgment and breach of contract on May 8, 2008. Additional facts are stated below as needed, keeping in mind the applicable standard for the relevant summary judgment motion.

*Discussion*

Jurisdiction in this case is based on diversity of citizenship between the parties. Indiana is the state with the closest contacts with the insurance contract at issue, and the parties' briefs assume that Indiana substantive law governs the dispute. This court must apply Indiana law as it would most likely be applied by the Indiana Supreme Court. *Bartel v. NBC Universal, Inc.*, 543 F.3d 901, 906 (7th Cir. 2008). Where the Indiana Supreme Court has not spoken directly to the legal issue, this court may consider cases from other Indiana courts and from other jurisdictions as persuasive precedent. *E.g.*, *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 417 (7th Cir. 1997).

In Indiana, insurance contracts are generally interpreted under the same rules as other contracts. *Gallant Ins. Co. v. Oswalt*, 762 N.E.2d 1254, 1262 (Ind. App. 2002). If the policy language is unambiguous, it is given its plain meaning, but genuine ambiguities are resolved to the benefit of the insured. *Meridian Mutual Ins. Co. v. Auto-Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind. 1998). This rule of construction has special force when interpreting ambiguous policy exclusions. *Id.* A significant division between courts over the interpretation of identical

language can itself be some evidence of ambiguity, see, *e.g.*, *Travelers Indemnity Co. v. Summit Corp. of America*, 715 N.E.2d 926, 936 (Ind. App. 1999), though Indiana has not gone so far as to suggest that any split of judicial authority proves the existence of an ambiguity that must be resolved in favor of the insured. (Such a rule would effectively delegate insurance coverage questions to the court most inclined to favor the insured.) Although the insured bears the initial burden of showing that its claim is covered by the policy, the burden shifts to the insurer to prove that an exclusion applies. *Hoosier Ins. Co. v. Audiology Foundation of America*, 745 N.E.2d 300, 309 (Ind. App. 2001).

In their summary judgment motions, the parties focus their arguments on three issues: first, whether Climb Tech's suit against Aearo was covered under the advertising injury provision of the policy issued by AISLIC; second, whether coverage of the suit was excluded under the policy's knowledge-of-falsity exclusion; and third, whether coverage of the suit was excluded under the policy's breach of contract exclusion. All three are questions of contract interpretation that are appropriate for resolution on summary judgment. See, *e.g.*, *Allstate Ins. Co. v. Tozer*, 392 F.3d 950, 952 (7th Cir. 2004); *Liberty Mutual Ins. Co. v. Michigan Mutual Ins. Co.*, 891 N.E.2d 99, 101 (Ind. App. 2008).

I.    *Advertising Injury*

AISLIC argues that Climb Tech's suit did not allege "advertising injury" because the suit did not allege injury arising "solely" out of Aearo's "advertising activities," as required by the policy's definition of advertising injury.   Aearo counters that the policy did not require that every claim in Climb Tech's suit arise out of advertising activities; rather, if a single claim in the suit was covered under the policy, then AISLIC had a duty to defend against the entire suit.

A.    *Duty to Defend*

Indiana follows the general rule that when one theory of liability in a suit against an insured is covered, the insurer's duty to defend and indemnify is triggered as to the entire lawsuit.  See, *e.g.*, *Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991); *Liberty Mutual Ins. Co. v. OSI Industries, Inc.*, 831 N.E.2d 192, 200 (Ind. App. 2005); accord, *Fidelity & Guar. Ins. Co. v. Kocolene Marketing Corp.*, 2002 WL 977855, at *4 (S.D. Ind. March 26, 2002) (Tinder, J.). Although reported Indiana decisions have not yet applied this general principle to the more specific issue of advertising injury coverage, there is no reason to expect they would not do so, and the Seventh Circuit has done so under analogous Wisconsin law.  See *CurtisUniversal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994) (reiterating "the principle that if any of the conduct alleged in the complaint falls within the scope of the insurance policy, the insurer must defend").

AISLIC nonetheless contends that the inclusion of the word "solely" in its definition of advertising injury imposes a "more rigorous requirement" on the insured, requiring "nothing less than a showing that the insured's advertising be the 'sole cause' of the alleged injury."  Dkt. No. 46, at 5-6, quoting *Discover Financial Services LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 527 F. Supp. 2d 806, 820, 823 (N.D. Ill. 2007).  The better reading is that while the word "solely" makes it more difficult for the insured to show that a particular claim was covered, if the insured successfully makes that showing for at least one particular claim, then the general rule applies and the insurer is obligated to defend the entire suit.  That reading is more consistent with precedent in Indiana and in other states, including the case that AISLIC cites to defend the narrower reading.  See *Discover*, 527 F. Supp. 2d at 820 n.10 ("Because the duty to defend is triggered even if only one theory of recovery potentially falls within the Policy's coverage, National Union's duty to defend is implicated if some of RAKTL's patent infringement claims might arise solely out of advertising activities such that RAKTL may have suffered an advertising injury.").

B.    *Trademark Infringement as Advertising Injury*

 The policy's definition of advertising injury reads in relevant part:  "injury arising solely out of your advertising activities as a result of one or more of the following offenses," followed by a listing of four offenses.[2]  To show that Climb

---

[2]The two relevant offenses in this case are the third, "misappropriation of
(continued...)

Tech's trademark infringement claim fell within the policy definition, Aearo must show first that the claim fell within one of the covered offenses and second that the claim arose solely out of Aearo's advertising activities.

Other federal courts applying Indiana law have held in similar cases that the language in the third enumerated offense – "misappropriation of advertising ideas or style of doing business" – includes trademark infringement.  See, *e.g.*, *Auto Owners Ins. Co. v. La Oasis, Inc.*, 2005 WL 1313684, at *7-9 (N.D. Ind. May 26, 2005); *Fidelity & Guar. Ins. Co. v. Kocolene Marketing Corp.*, 2002 WL 977855, at *8-9 (S.D. Ind. March 26, 2002).  A majority of other jurisdictions agree that trademark infringement is "advertising injury" as defined in standard CGL policies like AISLIC's.  See *Kocolene Marketing*, 2002 WL 977855, at *7. These courts concluded that the natural interpretation of "advertising ideas or style of doing business" includes a company's trademarks.  Trademarks are frequently used in advertising and often become advertisements in themselves. See *Adolfo House Distributing Corp. v. Travelers Property & Casualty Ins. Co.*, 165 F. Supp. 2d 1332, 1339 (S.D. Fla. 2001).  A broad interpretation of "style of doing business" would likewise include a company's use of its trademarks, so that infringement of a trademark would constitute the "misappropriation of advertising ideas or style of doing business."  The reasoning of these cases is persuasive.

---

[2](...continued)
advertising ideas or style of doing business," and the fourth, "infringement of copyright, slogan or title."  Dkt. No. 46, Ex. 2, at 6.

A minority of courts have held that the phrase "misappropriation of advertising ideas or style of doing business" does not encompass trademark infringement.  The most prominent example is *Advance Watch Co. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795 (6th Cir. 1996), in which the Sixth Circuit applied Michigan law and held that the phrase "misappropriation of advertising ideas or style of doing business" was "unambiguous" and that the phrase unambiguously referred to "a category of actionable conduct separate from trademark and trade dress infringement."  *Id.* at 802.

The Sixth Circuit's reading of the "misappropriation" phrase in *Advance Watch* is not persuasive, at least as a guide to predicting Indiana law on this question.  The court held that the phrase has an unambiguous meaning but did not explain that meaning other than to say that it refers to "the unauthorized taking or use of interests other than those which are eligible for protection under statutory or common-law trademark law."  *Id.*  That definition is too broad to be unambiguous.  For one thing, it would include copyright infringement, which is listed separately in the fourth offense.  The *Advance Watch* court also reasoned that "if Travelers had intended to provide coverage for [trademark infringement], the insurer would have referred to it by name in the policy, as it did in the case of 'infringement of copyright, title or slogan.'"  *Id.* at 803.  In effect, the court held that the insurance policy extended no coverage because the insurer could have phrased its policy more clearly.  That approach is not consistent with established principles of Indiana law.  See *Cincinnati Ins. Co. v. BACT Holdings, Inc.*,

723 N.E.2d 436, 439-40 (Ind. App. 2000) (ambiguities in policy language are "strictly construed against the insurer").  In addition, the Seventh Circuit has rejected the Sixth Circuit's reasoning in interpreting identical language under Wisconsin law.  See *Charter Oak Fire Ins. Co. v. Hedeen & Companies*, 280 F.3d 730, 735-36 (7th Cir. 2002).  This court predicts that Indiana would follow the majority view and hold that coverage for "misappropriation of advertising ideas or style of doing business" encompasses coverage for claims of trademark infringement.

Climb Tech's trademark infringement claim also likely falls under the fourth enumerated offense:  "infringement of copyright, title or slogan."  No reported Indiana decision has interpreted this language, but the Seventh Circuit and two federal district courts in Indiana have agreed that the phrase "infringement of title" in commercial insurance policies is broad enough to encompass trademark infringement.  See *Charter Oak*, 280 F.3d at 736 (applying Wisconsin law); *Kocolene Marketing*, 2002 WL 977855, at *11; *La Oasis*, 2005 WL 1313684, at *7. The court finds these cases persuasive on this point.

C.      *"Arising Solely"*

Because Climb Tech's claim of federal trademark infringement fell within at least one of the policy's enumerated covered offenses, the next question is whether that claim arose "solely" out of Aearo's advertising activities.

Indiana's courts have not construed this language in the context of an advertising injury provision, but the plain meaning of the phrase "arising solely out of" is that an injury is not covered under the policy unless that injury's sole cause was the insured's advertising activities.  Likewise, the Seventh Circuit has held that the term "advertising" in an advertising injury provision can be defined unambiguously as "actual, affirmative self-promotion of the actor's goods or services."  *Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 894 (7th Cir. 1996) (applying Indiana law).  Thus, under the policy, the insured's activities promoting its goods or services must be the sole cause of the alleged injury that brings the underlying suit within the policy's coverage, though not the sole cause of all injuries alleged in the case.  Accord, *Discover Financial Services LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 527 F. Supp. 2d 806, 819-20 (N.D. Ill. 2007).

Climb Tech's trademark infringement claim satisfies that requirement.  Without Aearo's advertising activities, Climb Tech would not have had a claim for relief under 15 U.S.C. § 1125(a), the federal trademark statute.  Climb Tech did not allege that Aearo had sold any products marked with Climb Tech's trademarked name or logo before first advertising those products.  Climb Tech alleged instead that Aearo, before selling its infringing products, first marketed those products "through the same dealer network that previously resold" Climb Tech's products.  The infringing product, Climb Tech alleged, "has been marketed, and continues to be marketed" in competition with Climb Tech's products.  It also alleged that Aearo and other defendants used Climb Tech's trademark to "market

and sell" Aearo's infringing product and used Climb Tech's "marketing materials" and "name" to "promote and sell" the infringing products.  Dkt. No. 46, Ex. 1, at 13.  What is important here is not the mere use of the words "market" or "promote" but the fact that the only activities for which Aearo could possibly be held liable under § 1125(a) were advertising activities or followed directly from those advertising activities.  Climb Tech did not have to allege any activities beyond Aearo's advertising activities to allege Aearo's liability under § 1125(a).  Even if Aearo had only "marketed" and "promoted" its infringing products using Climb Tech's trademark without making a single sale, it would still have been liable for trademark infringement.  See *CAT Internet Systems, Inc. v. Providence Washington Ins. Co.*, 153 F. Supp. 2d 755, 762 (E.D. Pa. 2001) (holding that trademark infringement was "caused by" advertising activities because the injury "was complete in the advertisement, requiring no further conduct").

Where the insured's advertising activities were the only activities alleged to give rise to an injury, and those activities were sufficient to give rise to the injury, then it is fair to say that the injury arose solely from those advertising activities.  No more is required under the policy or under Indiana law.  The trademark infringement claim alleged an advertising injury covered under the policy.  Because one claim fell within the scope of the policy, AISLIC was thus obligated to defend the entirety of the Climb Tech suit unless an exclusion applied.[3]

---

[3]This conclusion is consistent with cases holding that claims for patent infringement or misappropriation of trade secret did not allege "advertising injury"
(continued...)

---

[3](...continued)

under similar policies.  In *Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 94 F.3d 1219 (9th Cir. 1996), and *Heritage Mutual Ins. Co. v. Advanced Polymer Technology, Inc.*, 97 F. Supp. 2d 913 (S.D. Ind. 2000) (Barker, J.), the underlying complaints alleged only trade secret or patent infringement claims.  The use of a patent and the use of a trade secret do not necessarily involve any advertising at all, and they are considerably less like advertising than the use of a trademark. A patent is made public but is not usually intended to sell a company's products, and a trade secret is by definition kept secret from the public.  In *Microtec Research, Inc. v. Nationwide Mutual Ins. Co.*, 40 F.3d 968 (9th Cir. 1994), the complaint included allegations of trademark infringement, but the court characterized the claim as a "misappropriation of intellectual property" akin to patent infringement.  See *id.* at 971.

II.     *Exclusion for Knowledge of Falsity*

Although Climb Tech's trademark infringement claim alleged "advertising injury" within the meaning of the AISLIC policy, AISLIC was not obligated to defend or indemnify Aearo if the suit fell within one of the numerous exclusions laid out in the policy.   AISLIC first contends that coverage of the suit was precluded by a provision of the policy that excluded advertising injury "Arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity."  AISLIC argues that the exclusion applies here because Climb Tech alleged that Aearo acted willfully in stealing its designs and infringing its trademark, regardless of whether Climb Tech's claims actually required proof of such intent.   Aearo responds that, for the exclusion to apply, Climb Tech's claims must have *required* intentional misconduct, and its allegations must have been based "wholly and without exception on intentional conduct."

The knowledge of falsity exclusion does not apply in this case to relieve AISLIC at least from a duty to defend.  When a plaintiff can prove knowing or willful infringement of a trademark, that additional proof can support additional remedies, including punitive damages, under federal law and Texas law.   See *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 642 (7th Cir. 2003).  But Climb Tech could have recovered on its trademark infringement claims without proving that Aearo acted with knowledge of falsity.   The crucial question in a trademark

infringement suit is whether the defendant's actions were likely to cause confusion as to the origin of its goods; intent to infringe can be an important factor in that analysis, but the plaintiff is not required to prove that intent.  See *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).  Aearo was thus exposed to liability for trademark infringement even if it could prove at trial that it lacked any intent to infringe.  See *Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1119-20 (7th Cir. 1997) (district court's finding that defendant lacked intent to infringe was not clearly erroneous, but plaintiff established likelihood of confusion based on other factors).  That exposure to liability triggered AISLIC's duty to defend.

No Indiana court has yet decided whether the allegations of a lawsuit must be based entirely on intentional conduct for a similar knowledge of falsity exclusion to apply.[4]  Courts in other jurisdictions, however, have encountered the knowledge of falsity exclusion several times before.  The majority of those courts have determined that the exclusion does not apply if the plaintiff in the underlying lawsuit could have succeeded without proving intentional misconduct.  See *Orlando Nightclub Enterprises, Inc. v. James River Ins. Co.*, 2007 WL 4247875, at *8 (M.D. Fla. Nov. 30, 2007) (collecting cases).  These courts reason that, if the insured were to proceed to trial without the defense of its insurer, it could be

---

[4]In *Hoosier Ins. Co. v. Audiology Found. of America*, 745 N.E.2d 300 (Ind. App. 2001), the Indiana Court of Appeals addressed the "knowledge of falsity" exclusion but held only that it could not apply where the insured had not published any false material.  *Id.* at 309.

found liable under a theory that did not require a showing of intentional conduct and was otherwise covered under the insurance policy. In such a case, the insurer would have a duty to indemnify the insured for its losses. Because the duty to defend is broader than the duty to indemnify, the insurer is thus required to defend the insured if the underlying lawsuit could succeed on any theory without proof of intentional conduct. *Id.* at *8-9. These cases are persuasive and are consistent with principles of Indiana law. See *American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996) (ambiguous policy exclusions are to be construed strictly against the insurer); *Transamerica Ins. Services v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991) (duty to defend is broader than duty to indemnify).

*Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, 500 F.3d 640 (7th Cir. 2007), does not affect this result. In *Del Monte*, the Seventh Circuit ruled that an identical knowledge of falsity exclusion applied and the insurer had no duty to defend under Illinois law. The decisive question was whether the underlying complaint's allegations of intentional misconduct would trigger the exclusion even though the statutes underlying the complaint allowed for recovery without proving knowledge of falsity. Ultimately, the court found it irrelevant that "the statute underlying the action allows relief on a lesser showing of culpability." *Id.* at 646. What was essential, rather, was that the plaintiffs' "actual pleadings" requested relief solely on the basis of Del Monte's alleged fraud. *Id.* The plaintiffs' specific allegations of fraud and their reliance on that theory of relief meant that the exclusion applied.

Six years earlier, in *Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F.3d 742 (7th Cir. 2001), the Seventh Circuit took a somewhat different analytical path and reached the opposite result in a similar case.  Also applying Illinois law, the court found that the same policy exclusion did not exclude coverage of a suit for tortious interference:  "Coverage does not depend on the characterization of the wrong by the plaintiff."  If it did, "insurance protection could be lost as the result of a totally inconsequential omission by the drafter of the complaint."  *Id.* at 745.  The same logic led the court to hold that the knowledge of falsity exclusion did not apply.  Although the underlying claim was "replete with allegations of deliberate misconduct" by the insured, the court reasoned that those allegations were "much more likely to have been intended as a pitch for punitive damages than as a limitation of the claim."  *Id.* at 746.  The insurer therefore had a duty to defend.

*Del Monte* and *Cincinnati* took different approaches but are not necessarily inconsistent.  Both cases asked whether it was conceivable that the underlying plaintiff could recover from the insured without showing that the insured acted willfully or with knowledge of falsity.  In *Del Monte*, the exclusion applied because the answer was no, based on the way the plaintiffs had structured their complaint.  See 500 F.3d at 644 ("allegation of fraudulent and knowingly false statements" was "essential to the plaintiffs' claim" under Supreme Court precedent); *id.* at 645 ("Not one [complaint] could lead to relief on a showing of negligent conduct alone.").  In *Cincinnati*, the exclusion did not apply because the

answer was yes.  See *Cincinnati*, 260 F.3d at 746 ("Proof of deliberateness would merely be icing on the cake.").

Strictly speaking, of course, *Del Monte* and *Cincinnati* are not binding in this case because they applied Illinois law, but they provide a helpful framework for predicting how Indiana law would be applied.  Given Indiana's broad concept of the duty to defend, the court predicts that Indiana would follow the approach in *Cincinnati* in asking whether the plaintiff's allegations "at least arguably" fell within "one or more of the categories of wrongdoing that the policy covers." *Cincinnati*, 260 F.3d at 745.  Or, as applied to the knowledge of falsity exclusion: could the insurer arguably have been held liable on an otherwise covered claim without proof of intentional misconduct?  Here, even though Climb Tech clearly alleged intentional misconduct in its complaint, the claim for trademark infringement unquestionably left open the possibility of liability without proof of intentional misconduct.  AISLIC had a duty to defend as a result.[5]

To the extent that AISLIC's cases hold that the knowledge of falsity exclusion applies whenever the complaint alleges intentional misconduct, regardless of the possibility of the insured's liability on a covered claim, they are

---

[5]There are several explanations for Climb Tech's decision to allege intentional misconduct, among them its desire to obtain treble damages on its trademark infringement claim, see *Orlando Nightclub*, 2007 WL 4247875, at *5, or to recover damages in excess of a statutory cap, see Texas Civil Practice and Remedies Code § 41.008(c)(13) (providing an exemption to the state law cap for conduct rising to the level of a third degree felony).

unpersuasive as guides to Indiana law.   See *Atlantic Mutual Ins. Co. v. Terk Technologies Corp.*, 763 N.Y.S.2d 56, 63 (App. Div. 2003); *A.J. Sheepskin & Leather Co. v. Colonia Ins. Co.*, 709 N.Y.S.2d 82, 82-83 (App. Div. 2000); *Regent Ins. Co. v. Tanner*, 1999 WL 1102808 (Wis. Ct. App. 1999).[6]  When the legal theories in the underlying complaint leave open the possibility of the insurer's duty to indemnify, the insurer's broader duty to defend is triggered and the knowledge of falsity exclusion does not apply.[7]

III.   *Exclusion for Breach of Contract*

AISLIC also contends that coverage is barred by a general policy exclusion for claims based on injury "arising out of . . . Breach of contract."  According to AISLIC, Climb Tech's suit against Aearo arose out of Aearo's breach of its confidentiality and distribution agreements because Climb Tech's "claims against Aearo are predicated on the terms of those agreements."  Aearo argues that for the breach of contract exclusion to apply, AISLIC must show that Climb Tech's lawsuit arose only out of breach of contract; because the suit included other

---

[6]The cited New York cases are not persuasive guides to Indiana law.  They are also inconsistent with other New York decisions, see *Terk Technologies*, 763 N.Y.S.2d at 63, and both courts relied on earlier judicial findings that the insured had intentionally infringed.   See *id.* at 60-61; *A.J. Sheepskin*, 709 N.Y.S.2d at 83.  There has been no similar finding here.

[7]Because the court holds that the knowledge of falsity exclusion does not apply in this case, it need not address Aearo's contention that the application of that exclusion would make advertising injury coverage illusory.

theories of liability, the exclusion does not apply. Dkt. No. 48, at 21. The court concludes that the breach of contract exclusion does not apply in this case.

As Judge Rodovich has explained, Indiana's courts have not spoken on this question. He predicted in a thoughtful opinion, however, that Indiana would follow the majority of other jurisdictions so that a breach of contract exclusion would apply only if the claim in question would not have existed but for the insured's alleged breach of contract. See *Auto Owners Ins. Co. v. La Oasis, Inc.*, 2005 WL 1313684, at \*11-13 (N.D. Ind. May 26, 2005); see also *Houbigant v. Federal Ins. Co.*, 374 F.3d 192, 202-03 (3d Cir. 2004); *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 623 n.15 (2d Cir. 2001); *Assurance Co. of America v. J.P. Structures, Inc.*, 1997 WL 764498, at \*3-5 (6th Cir. 1997). *J.P. Structures* illustrates these courts' reasoning, holding that the exclusion did not apply when "it was the defendants' unauthorized use of the Archadeck trademark, not their breach of the franchise agreement, that gave rise to U.S. Structures' claims for trademark infringement." *J.P. Structures*, 1997 WL 764498, at \*4.

This reading is consistent with Indiana courts' narrower interpretation of the phrase "arising out of" in other commercial liability policy exclusions. See, e.g., *Indiana Ins. Co. v. DeZutti*, 408 N.E.2d 1275, 1280 (Ind. 1980) (suggesting that "arising out of" in a policy exclusion means "caused by"); *Jim Barna Log Systems Midwest, Inc. v. General Cas. Ins. Co. of Wisconsin*, 791 N.E.2d 816, 828 (Ind. App. 2003) (suggesting that "arising out of" means "resulting from"). To meet its

burden of showing that the exclusion applies, AISLIC would need to show that Climb Tech would not have had a claim for trademark infringement but for Aearo's alleged breach of the distribution and confidentiality agreements it signed with Climb Tech.

It is a close question, but AISLIC fails to meet its burden in this case.  It is true that Aearo's infringement of Climb Tech's trademark occurred in the context of three agreements between the parties.  Under those agreements, some uses of Climb Tech's trademark were authorized and thus non-infringing, while other uses of that trademark would have been unauthorized and thus infringing. Further, Climb Tech's complaint did not allege any facts subjecting Aearo to liability for trademark infringement other than the fact that Aearo used Climb Tech's trademark in a way that was not authorized by the agreements.  In this sense, Aearo was able to infringe the trademark only because of its agreement with Climb Tech.  Cf. *Houbigant*, 374 F.3d at 203 n.13.

The trademark infringement claim, however, is based on a legal theory entirely different from a claim for breach of contract.  Climb Tech's rights in its trademark, the rights on which it is able to sue for trademark infringement, came into being before any contract with Aearo was signed and were independent of any such contract.  See *Hugo Boss*, 252 F.3d at 623 n.15; *J.P. Structures*, 1997 WL 764498, at *4.

If the lawsuit had proceeded to trial, Climb Tech could have proved trademark infringement without proving breach of contract, for instance, if the court or jury found that the confidentiality and distribution agreements were invalid but that Aearo had infringed Climb Tech's trademark by using it without permission. Perhaps that scenario was unlikely in view of the connection between the use of Climb Tech's trademark and the provisions of the agreements. Nevertheless, Climb Tech's suit raised the possibility that Aearo could be held liable for a covered advertising injury based on a legal theory independent from breach of contract. That possibility was enough to bar application of the breach of contract exclusion, so that AISLIC's broad duty to defend under Indiana law applied to the entire Climb Tech suit against Aearo.

IV.   *Damages*

The final question to be addressed is the amount of damages Aearo may collect for AISLIC's failure to defend and indemnify it against Climb Tech's suit. In its brief in support of summary judgment, Aearo asserted that it is entitled to "the damages [it] incurred in paying the costs of its defense" as well as "the full amount it paid in settlement." In response, AISLIC repeated its arguments that it is not liable for any costs incurred by Aearo in defending or settling the suit.[8]

---

[8]In a recently-filed motion for leave to supplement and in opposition to that motion, the parties have submitted argument on issues surrounding the specific amount of damages to which Aearo is entitled. Dkt. Nos. 56, 58, 60. These arguments are premature. Aearo's initial brief supporting its motion for summary judgment offered no specific damages figure. Because the only damages issue on
(continued...)

Under Indiana law, when an insurer denies coverage and refuses to defend its insured, it will be held liable for the costs of defense and settlement if it turns out to be wrong about its coverage obligations.  See *Frankenmuth Mutual Ins. Co. v. Williams*, 690 N.E.2d 675 (Ind. 1997); *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015 (Ind. App. 1999).  In this case, it is undisputed that AISLIC did not defend Aearo against the Climb Tech suit, either with or without a reservation of rights.  Nor did AISLIC seek a declaratory judgment that it was not obligated to defend its insured.  Because Climb Tech's trademark infringement claim against Aearo was covered under AISLIC's policy and was not excluded from coverage under any policy exclusion, AISLIC breached its duty to defend and is obligated to compensate Aearo accordingly.  Further discussion of the amount of damages is unnecessary to resolve these motions and will be postponed until future proceedings.

*Conclusion*

For all of the reasons stated above, AISLIC's motion for summary judgment is denied, and Aearo's motion for summary judgment is granted.  The court will meet with counsel in the near future to address how best to resolve the damages issues.

---

[8](...continued)
which Aearo requested summary judgment was the categories of damages to which it is entitled, AISLIC's motion for leave to file a supplement (Dkt. No. 56) is denied as premature.

So ordered.

Date: December 17, 2009

_David F. Hamilton_

DAVID F. HAMILTON, Circuit Judge*
*sitting by designation

Copies to:

Tiffany J. Beverly
BATES & CAREY, LLP
tbeverly@batescarey.com

David C. Campbell
BINGHAM MCHALE LLP
dcampbell@binghammchale.com

Anne L. Cowgur
BINGHAM MCHALE LLP
acowgur@binghammchale.com

Daniel I. Graham Jr.
BATES & CAREY, LLP
dgraham@batescarey.com

Kelly A. Kraft
BATES & CAREY LLP
kkraft@batescarey.com

Robert S. Marshall
BATES & CAREY LLP
rmarshall@batescarey.com